**MITCHELL PALLET AND LUMBER COMPANY, Plaintiff,**

v.

**KOCKUM INDUSTRIES, INC., a Corporation d/b/a Soderhamn Machine Mfg. Co., Defendant.**

**No. 71 C 214(4).**

United States District Court,
E. D. Missouri, E. D.
March 9, 1972.

Blumenfeld, Kalishman, Marx & Tureen, St. Louis, Mo., for plaintiff.

Cook, Murphy, Lance & Mayer, St. Louis, Mo., Balch, Bingham, Baker, Hawthorne & Williams, Birmingham, Ala., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

Plaintiff instituted this action by filing a complaint in two counts: Count I for false representations and Count II for breach of warranty of fitness for use arising out of plaintiff's purchase from defendant of a "chipper" for use in the wood working industry. The cause was tried to the Court without a jury. At the close of plaintiff's case, the Court granted defendant's motion for judgment in its favor, plaintiff having failed to sustain the burden of proving facts entitling it to the relief sought. This Court has jurisdiction by virtue of 28 U.S.C. § 1332(a) by reason of the diversity of citizenship of the parties and the amount in controversy.

At trial the following facts were established. Plaintiff is engaged in the business of manufacturing wooden material handling pallets and the defendant is in the business of manufacturing and selling various types of machinery used in the wood working business.

In the spring of 1969, Society Brand Hat Co., which is engaged in the clothing business generally, bought out plaintiff, and began operating plaintiff's pallet mill in Lutesville, Missouri about April 1, 1969. The first year was profitable but the operation became less profitable thereafter. Subsequently, a new plant foreman began managing the plant. It was then decided that the plant should make use of the scrap or waste of the business, which consisted of pieces of oak lumber of odd shapes and sizes. The scrap lumber included some 2 x 4's, some 4 x 4's and some pieces five or six feet long, one inch thick and as wide as 10 inches. About 80% of the scrap lumber was green oak which is fairly easy to mill, and about 20% was seasoned oak which is extremely hard. In the early months of 1970, plaintiff was interested in turning the wood scraps into wood chips which could then be sold to paper manufacturers. For that reason plaintiff was interested in purchasing a piece of machinery called a "chipper".

On March 23, 1970, the plaintiff entered into a 5-year contract with Westvaco Corporation effective May 1, 1970, whereby plaintiff would sell its wood chips to Westvaco. The contract provided that all chips sold must conform to the buyer's (Westvaco's) specifications. In fact, the contract provided: "All chips are to be produced from sound, unseasoned materials, preferably not sap stained, but permitting chips from logs suitable for lumber. Chips are to be free of bark, rotten or doty wood, burnt wood, dirt or other foreign materials".

In April of 1970, plaintiff purchased a chipper from defendant. The only warranty made for the chipper was an oral statement that "the chipper will do the job." The chipper worked part of the time, but not all of the time.

The credible testimony of plaintiff's witnesses revealed that nails went down the conveyor belt toward the chipper, and that twenty per cent (20%) of the lumber that was put into the chipper was seasoned lumber and therefore very hard.

Plaintiff claims that defendant is liable because the chipper did not function properly and that the chips were not meeting specifications at Westvaco. Plaintiff has failed to sustain its burden of proof for two reasons: the chipper was not intended to chip seasoned oak or nails; and the specifications under the Westvaco contract required that all chips be from *unseasoned* wood.

Plaintiff's claim based on breach of warranty must fail. The "warranty" relied upon ("the chipper will do the job") was made after Westvaco had approved chips produced on a similar machine from unseasoned wood, as required by contract specifications. No specific warranty was proved and the evidence was clear that plaintiff used seasoned

wood in the chipper. For these reasons, plaintiff's contention that the chipper did not perform as warranted must fail.

In general, the testimony indicated that plaintiff's new supervisory employees had very little knowledge of the lumber business or sawmill operations. The company was having problems, perhaps due to management or operations, but the problems were not caused by defendant or defendant's chipper.

The evidence established that plaintiff returned a chipper to defendant on November 20, 1970, and that on December 1, 1970, defendant tendered back the amount of $7,548.20, that plaintiff had paid as a down payment on the equipment. It is undisputed that the amount of $7,548.20 is due and owing from defendant to plaintiff.

Judgment will be entered in accordance with the Memorandum.